IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 23-30 |
| ) | |
| TIEN NGUYEN ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

AND NOW comes the United States of America by Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, and Stephen R. Kaufman and Robert S. Cessar, Assistant United States Attorneys for said district, and submits this Sentencing Memorandum as follows:.

## BACKGROUND

Vulnerable victims all across the United States, often elderly people, were convinced through various nefarious means, including computer pop-ups followed by telephone calls, to send their money to bank accounts created with stolen Personally Identifiable Information (PII). The victims who actually lost money will be referred to as "loss victims," and the individuals whose identifying information was used to set up the PII accounts will be referred to as "PII victims."

After the money was transferred by the loss victim to the PII account, it was then quickly removed from the PII accounts by persons such as Tien Nguyen. Nguyen was recruited to participate in the fraud scheme by its leader, Thien Phuc Tran. Tran would provide account information for specified PII accounts to Nguyen, who would then use the account information to make payments on his credit cards and mortgage. Nguyen would then transmit the bulk of the funds to Tran, sometimes through a cryptocurrency exchange, thus laundering the funds.

Tien Nguyen's residence in Dallas was searched on May 12, 2022 pursuant to a federal

1

search warrant. Approximately $15,000 in cash and a large number of gift cards were seized. Also obtained were electronic devices which contained relevant evidence, including communications between Tran and Nguyen.

On April 26, 2023, the defendant pleaded guilty to a one count Information charging him with money laundering, in violation of 18 U.S.C. § 1957(a). In the plea agreement, the parties agreed upon a loss amount range of $250,000 to $550,000. The parties agreed that the final offense level was 18 which, when combined with a Criminal History Category I, produced a guideline range of 27 to 33 months of imprisonment.

### NEW SECTION 4C1.1 OF THE SENTENCING GUIDELINES

New Section 4C1.1 of the Sentencing Guidelines takes effect on November 1, 2023. It provides that "zero point" offenders, that is, defendants with zero criminal history points as calculated under Chapter 4 of the Sentencing Guidelines, are entitled to a two (2) level reduction in their offense level. This new two level reduction is to be applied after all Chapter 2 and 3 adjustments are made.

Defendant Nguyen has zero criminal history points per the PSIR and the parties agree. The only provision which could possibly disqualify Nguyen from application of the new guideline is Section 4C1.1(a)(6), which provides: "the defendant did not personally cause substantial financial hardship."

Nguyen was certainly a member of a wide-ranging conspiracy which caused substantial financial hardship to many victims. However, because he participated as a launderer of money, and did not directly communicate with (or even know the identity of) the loss victims, there is a question of whether he "personally" caused substantial financial hardship. As the provision is brand new, the government has no authority to cite for the principle that a money launderer, who

did not deal even indirectly with the loss victim, "personally" caused substantial financial harm. Therefore, at this juncture the government will not contest the applicability of Section 4C1.1 to the calculation of Nguyen's sentence.[1]  Lowering the offense level of 18 by two levels results in a final offense level of 16 and a guideline range of 21 to 27 months.

## RELEVANT SECTION 3553(A) FACTORS

The government will succinctly set forth its position with respect to the Section 3553(a) factors relevant to this case:

### 1. The Nature and Circumstance of the Offense

Nguyen was a member of a wide-ranging criminal scheme which defrauded many victims of funds.  He was directly connected to Thien Phuc Tran, the leader of the money laundering side of the scheme.  He brought two other lower-level participants into the scheme, Z.Z. and K.T., who have not been charged to date.  He was directly involved in laundering a little over a quarter of a million dollars, which is certainly a significant sum.  The money laundering aspect of this criminal activity has made it difficult to identify all of the participants in the scheme and to trace the flow of fraudulently obtained funds.  Finally, he personally benefitted by using money to which he had no entitlement to make payments on his credit cards and residential mortgage.

### 2. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

Noted scholars and judges have endorsed the view that white collar crimes may be effectively deterred by appropriate sentences. See Stephanos Bibas, White-Collar Plea Bargaining & Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005) ("[W]hite-

---

[1] Moreover, the government has not received information to date from any loss victims that would satisfy the definition of "substantial financial hardship" as described in Application Note 4(F) of the Commentary to Section 2B1.1 of the Sentencing Guidelines.  See Section 4C1.1(b)(3).

3

collar crime is more rational, cool, and calculated than sudden crimes of passion or opportunity, so it should be a prime candidate for general deterrence. An economist would argue that if one increased the expected cost of white-collar crime by raising the expected penalty, white-collar crime would be unprofitable and would thus cease."); United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crimes therefore can be affected and reduced with serious punishment."); United States v. Musgrave, 761 F.3d 602, 609 (6th Cir. 2014) (holding that economic and fraud-based crimes are prime candidates for general deterrence).

In the internet age, scams abound and sometimes it seems that little can be done to combat them – the perpetrators are usually difficult to identify and many reside overseas. Therefore, when a scheme is uncovered, like this one, which involves millions in fraud, it is important that every participant in the conspiracy receive just punishment to serve as a deterrent to others.

3. **The Need to Avoid Unwarranted Sentencing Disparities**

Nguyen will be the first defendant sentenced, including the related cases of Tran and Bui. The government submits that Nguyen is less culpable than Tran, and of roughly equal culpability to Bui. As the Court knows, the sentencing hearings for Tran and Bui are scheduled in January 2024.

4. **The Need to Provide Restitution**

In the plea agreement, the parties agreed to recommend a restitution amount of $253,122.16. However, since the plea agreement was signed, the government received information identifying another victim with a $6,000.00 loss. The government notified counsel for the defendant of this additional information and defense counsel understands the need for a modified restitution

amount.  Therefore, the government seeks an order of restitution in the amount of $259,122.16.

The Court's Presentence Order encourages the parties to set forth the basis for any stipulations.  The restitution was calculated per the following chart:

**Tien Nguyen Restitution Calculation**

| Name on Account (PII Victims) | Bank | Fraud Loss Victims (Wires into accounts) | Victim Loss Amount |
|---|---|---|---|
| CM<br>Groton, MA | Charles Schwab | NR<br>London, Ontario CA | $15,362.16 |
| | | JLS<br>Monroe, UT | $22,600.00 |
| | | SC<br>Elkins Park, PA | $7,150.00 |
| MF<br>Millbury, MA | Charles Schwab | VVD<br>Miami Shores, FL | $25,000.00 |
| RK<br>Scarborough, ME | Charles Schwab | CS & RS<br>Rincon, GA | $4,891.00 |
| MG<br>Hickory, NC | Charles Schwab | EML<br>Fort Wayne, IN | $47,700.00 |
| | | CRJ<br>Brick, NJ | $9,886.00 |
| | | LSK<br>Greenville, NY | $5,000.00 |
| LS<br>Orlando, FL | Charles Schwab | WAD<br>Tallahassee, FL | $7,000.00 |
| | | ALF & DLF<br>De Kalb Junction, NY | $6,000.00 |
| AB<br>San Jose, CA | Charles Schwab | SFD<br>Deer Park, CA | $20,000.00 |
| GL<br>Auburn, MA | Wells Fargo | DCF<br>Ashland, OR | $25,000.00 |
| | | AP<br>Chatsworth, CA | $9,233.00 |
| SAD<br>Tulare, CA | Wells Fargo | PLW<br>Rochester Hills, MI | $19,700.00 |
| MM<br>Dallas, GA | Wells Fargo | HHK Trust<br>Honolulu, HI | $34,600.00 |
| TOTAL | | | **$259, 122.16** |

The above chart, using initials, identifies the PII victims, who did not lose any money, and the loss victims, who did. As shown, the perpetrators set up accounts at Charles Schwab and Wells Fargo, using the names of the PII victims, and then the funds fraudulently obtained from the loss victims were sent to the PII accounts. Nguyen received information regarding all of the above accounts from Tran, which enabled him (or others such as Z.Z. and K.T.) to use the funds for their own personal benefit.

WHEREFORE, for the reasons set forth above, the Court is respectfully requested to impose a fair and just sentence, and order restitution in the amount of $259,122.16, The government does not seek imposition of a fine as all available funds should go toward restitution.

Respectfully submitted,

ERIC G. OLSHAN
United States Attorney

By:   /s/ Stephen R. Kaufman
STEPHEN R. KAUFMAN
Executive Assistant U.S. Attorney PA
ID No. 42108

/s/ Robert S. Cessar
ROBERT S. CESSAR
Assistant U.S. Attorney
PA ID No. 47736